May it please the Court, Cass Christensen on behalf of the petitioner, Martin Moran. I'll address three points this morning. First, that Mr. Moran did not engage in alien smuggling under Section 1182A6E1. Second, that Mr. Moran did not receive a full and fair hearing on the merits of his application for cancellation of removal. And third, that the immigration judge incorrectly adopted an entry date for Mr. Moran of 1992 when, in fact, the record shows unequivocally that Mr. Moran entered the country in 1989. With respect to the meaning of the smuggling statute, Your Honors, the title of the subsection 1182A6E1 is smugglers. It's defining a class of persons as smugglers. And the specific requirements that are necessary to find a person to be a smuggler under that statute are knowingly encouraging, inducing, aiding, assisting, or abetting entry into the United States. That requires, if you can strew those terms together, as is the appropriate approach to statutory construction, you can strew the terms together, it requires some conscious action by the Petitioner to make the unlawful entry succeed. Why does a reasonable fact-finder consider a client otherwise when he paid to have his wife brought across? Your Honor, the critical distinction is that Mr. Moran did not pay to bring his wife across the border. Mr. Moran paid to protect his wife and his son after they had already arrived in the country. Why is a reasonable fact-finder compelled to conclude that? Your Honor, I respectfully submit that a reasonable fact-finder is compelled to reach that conclusion because the record in the case shows that Mrs. Moran unilaterally made all of the decisions and undertook all of the conduct that resulted in her entry. She is the one that decided to enter the country. Mr. Moran did not participate in that decision. She is the one that hired a smuggler in Mexico. Mr. Moran did not participate in that conduct. She is the one with the smuggler who determined when, how, and where to re-enter the United States. Mr. Moran, again, did not participate in any of that conduct. Is there evidence that before they crossed over he had agreed to pay? Your Honor, the record is unclear as to whether or not he had agreed to contribute before, during, or after the time of entry. But I think the critical point to make is that regardless of whether he agreed beforehand, his agreement was to help protect them after they arrived. His agreement wasn't intended to and didn't have the effect of causing them to enter the country, and it didn't contribute to their entry into the country. In fact, I'm sorry. Could one infer that they would not have crossed if he hadn't agreed to pay the smuggler? Your Honor, I do not see any evidence in the record to support the inference. In fact, I think the record... Well, the smuggler wasn't going to do it for free, was he? No, Your Honor. The smuggler certainly was for hire, and the question then becomes... But nobody else was going to pay except for her mother and father, who paid for the son. That's correct, Your Honor. The mother and father paid, and there's no indication that she wouldn't have come into the country if Mr. Moran hadn't been able to borrow money from his boss to contribute to the payment. The question then would be whether the parents would have paid the entire amount due or whether there would have been some problem facing Mrs. Moran and her son if they were unable to come up with the money. But they would have already been in the country, and that is the critical issue under the statute. The statute requires, again, something that contributes to the successful entry into the United States, and Mr. Moran simply didn't contribute to the entry of his family into the United States. Do you know when the smugglers were actually paid? I'm sorry. Could you repeat the question? Do you know when the payment was made? Was it right when they entered? You know, right when they got to her mother's house, or... Your Honor, I don't think... Was it a week later, a month later? I don't think the record shows the timing of the payment. I think the indication is that the payment occurred after they arrived at her parents' house. At her parents' house. Yes, sir. Because that's where the smuggler had agreed to take it. That's correct, Your Honor. The second point that I would like to address is that Mr. Moran did not receive due process. The hearing... Let me stop you right there. Now, was that brought up before the BIA? Your Honor, we respectfully submit that Mr. Moran sufficiently exhausted his remedies before the BIA because he, in his pro se brief, generally addressed the fact that the evidence did not support the finding, and he specifically referenced the fact that he didn't have counsel present during that hearing, which, of course, is one of the key arguments we're making with respect to due process. He certainly didn't use exact legalese, but as this Court, of course, has said in the Aggerman case and in other cases, the Court generously construes pro se briefs in favor of finding exhaustion, and we respectfully request the Court do so in this case as well. Also, I would point out to the Court that the government squarely addresses the alien smuggling issues and arguments that are asserted in this petition, but those arguments are similarly contained in the same paragraph, which is a succinct argument raised by Mr. Moran in his BIA appeal. It's at page ER100 of the excerpts of record. So I think it's inconsistent for the government to concede that exhaustion occurred with respect to that issue, but not with respect to the other issues. They're all succinctly folded into a one-paragraph argument that was before the BIA. Mr. Moran, at the time he appeared for his initial hearing, had no notice that the hearing was going to address whether he was qualified for relief from removal. There was no mention during those proceedings of cancellation of removal. The immigration judge said the hearing was for the purpose of determining whether he was here legally, and similarly, the notice to appear that he received raised only that issue. Therefore, Mr. Moran had no reason to believe he needed to counsel at the hearing. It was an uncontested issue. He admitted he was here illegally, and it was unfair for the immigration judge to essentially secretly adjudicate the question of his eligibility for cancellation of removal. Without counsel, all of which was prejudicial to Mr. Moran. The third point that I would like to address is the immigration judge's incorrect conclusion that Mr. Moran entered the country in 1992. The record clearly shows that Mr. Moran entered first in April 1989. The government's brief at page four concedes that fact. It would be manifestly unjust not to correct the issue on appeal. And once that issue is corrected and Mr. Moran receives the benefit of his April 15, 1989, entry date, he meets one of the four requirements for cancellation, which is continuous 10-year residency within the United States. With that, I would like to reserve the remainder of my time for rebuttal. Thank you. May it please the Court. I'm Nicole Nardone, attorney for the Respondent of the United States. The only question before the Court here is whether the immigration properly found that Mr. Moran's encouragement of his wife's return, with the knowledge that she would need a smuggler to reenter the United States, and his arrangement prior to crossing to pay the smugglers, constitutes smuggling under INA section 212A6. Tell me exactly what the evidence of that is, would you? Well, I mentioned two things. You want evidence regarding encouragement or evidence regarding payment? Commitment to make the payment before they crossed. Well, what the evidence shows, Your Honor, while the evidence isn't crystal clear here with regard to the time frame, as Petitioner's Counsel mentioned, the Court should keep in mind the fact that it is to uphold the immigration's finding with regard to the finding that Mr. Moran encouraged his wife's reentry and also assisted in that reentry. Just the facts, ma'am. Okay, sure. Yes, the facts are not crystal clear on this issue, as I mentioned. Essentially, Mr. Moran was asked, before your wife crossed in the United States, he knew she was going to use the service of the smuggler, and he agreed yes. Mr. Moran said, my wife first called her parents. Her parents called me to tell me that they were already in Tijuana, and he said that he knew that he was expected to have the money to pay the smuggler at that time. So at some point, Mrs. Moran contacted her parents from Tijuana, her parents in the United States. Her parents at that time were living with her husband, and at some point, the parents contacted the husband and said, we're going to need to make an arrangement to get this money together, and Mr. Moran agreed. At some point, he then did speak with the smugglers. He did testify that that was once they were in the United States, and he assured that he was going to have the money. So the facts aren't, as I said, are not crystal clear, but again, the court is to uphold the findings of the immigration judge unless it finds that a reasonable fact finder would be compelled to find to the contrary that he took an affirmative step in assisting in the alien smuggling. As I mentioned, Mr. Moran's testimony does establish that he did both encourage his wife's entry into the United States with a smuggler. He testified that he sent his wife back to, his wife went back to Mexico to have a child, and he told her that he would like her to return to the United States and that she could do so whenever she wanted. However, he did on several occasions in the testimony, state quite clearly to the immigration judge after a number of questions that yes, indeed, he understood that the only way his wife was going to return into the United States was with the use of a smuggler. He doesn't indicate that she's going to come back in any legal way whatsoever. He doesn't testify that he told his wife, why don't you apply for a border crossing card or some other legal method of reentering the United States. Rather, he indicates that indeed he understood that if she was going to come back to the United States, she was going to come with an alien smuggler. And then he also testifies to the fact that he did contribute this money and made arrangements with her parents to pull this money together to pay this smuggler when she came across. Based on these facts, the court should uphold the finding of the immigration judge unless it finds that a reasonable adjudicator would be compelled to conclude to the contrary. With regard to the petitioner's due process claims, the court should find they're without merit for a number of reasons. First, as the court mentioned, these issues were not raised before the board and therefore were not exhausted. Second. Exactly what did he say in his appeal on this issue? Your Honor, I can give you English here. On page 13 of the administrative record in the Respondent's appeal, the Respondent indicates that he disagrees with the immigration judge's conclusion that he assisted in smuggling his wife across the border and that the testimony was vague and inconsistent and was given without the assistance of an attorney. That's all? Furthermore, these claims cannot form the basis of a due process claim. Petitioner essentially is seeking a discretionary relief, cancellation of removal, and cancellation of removal is not a qualifying liberty interest to which the petitioner is entitled. And with regard to the petitioner's claims that he was denied a fair hearing and that he was denied a right to counsel, these arguments are also without merit for a number of reasons. First of all, the judge explained very clearly to the petitioners at the outset of the hearing that they were entitled to counsel. The judge then, upon the petitioner's questioning, further explained to them, the petitioners asked, why would we need counsel? Is it important? The judge said, yes, indeed, it could be important to your case, and indicated that there could be negative consequences if they did not obtain counsel. The judge also told them that they could obtain counsel for free, that there would, that they had that available to them, that option. The judge, at the end of the hearing, or I'm sorry, before the hearing proceeded, the petitioners asked, well, what if we proceeded with the hearing and got a judge after the hearing? The judge also informed petitioners at that point that if they were to proceed with the hearing that day without counsel, there could be dire consequences, even if they were to obtain a lawyer at the end of that hearing and be represented from thereon. The judge repeated questions regarding smuggling as to assure that he understood the petitioner's response. And I think this is well represented by the record, that the judge asked the questions a number of times, and trying to really ascertain whether or not the petitioner had encouraged his wife, knowing that smuggling would be the only way that she would reenter the country. And this question was re-asked several times, several times in the hearing. Fourth, the judge did, after the hearing, at the petitioner's request, provide a cancellation, provide another hearing regarding the issue of cancellation of removal. And the petitioner came to that hearing, again, represented by counsel. Now, the record is important with regard to this hearing, because at the hearing, the petitioner is arguing here, essentially, that he was not provided an opportunity to be heard on the issue of cancellation of removal, and that the smuggling issue was precluded by the immigration judge in the first hearing. Here he comes to a hearing that the judge specifically opened for the purposes of hearing the issue on cancellation of removal, and is provided an opportunity, his counsel is provided an opportunity to ask him questions on this issue of smuggling. And the counsel declines to ask him any questions. So he declines an opportunity to clarify the issues, regardless of the fact that the immigration judge actually says to him, petitioner's counsel, are you prepared to do any additional testimony with regard to the issue of smuggling? And he says, I don't have any further questions on the matter. So clearly, the petitioner was provided with an opportunity, and his counsel declined to clarify the issues, if there were any clarifying to be done at that point. And finally, I think this is a very important point, because with regard to the petitioner's due process claim, he will need to establish that the judge's conduct in that hearing potentially affected the outcome of his case. And the government would argue that if he was provided an opportunity to clarify any sorts of problems that may have happened during the hearing with the judge, and declined the opportunity, then it wasn't the judge's conduct alone that potentially affected his case. Rather, it was his own counsel's failure to address the issue and clarify any problems in the hearing. I think that's answered Judge Fletcher's question, and your time has expired. Thank you very much. Thank you, Your Honor. I'll briefly address the points raised by the government in their response argument. First, I think it's critical to emphasize that it's unfair to impute Mrs. Moran's conduct to Mr. Moran. And really, the immigration judge and the government in this case are blurring that distinction. If you look at the testimony as a whole, instead of plucking isolated answers to compound questions from the record, as the immigration judge did, you'll see that Mr. Moran's only quote-unquote admission or concession was that generally people use smugglers to come across the border and enter the country from Mexico. That doesn't mean that Mr. Moran did not make an illegal entry. And Mr. Moran's knowledge, Your Honors, is not the issue here. The issue here is what did Mr. Moran do and when did Mr. Moran do it? And as I mentioned, the record shows that Mr. Moran did not do anything to consciously contribute to his family's illegal entry into the United States. This case, therefore, is distinguishable from the Angwin case and distinguishable from the Yoshida case, and both of those cases which addressed criminal alien smuggling under 8 U.S.C. Section 1324, the defendant was playing an essential role in the actual entry of the alien into the United States. That factor is absent here, and therefore, Mr. Moran is not a smuggler under Section 1182A6E1. With respect to the due process issue, Mr. Moran clearly is not a smuggler under Section 1182A6E1. Mr. Moran cites cases and makes an argument that really comes down to Mr. Moran not having a due process right to the relief that he is seeking. But we're not suggesting he has a due process right to the relief. We're suggesting that he has a due process right to a fair determination and consideration of his application for cancellation of removal. And the judge, with respect to the ability to retain counsel, never told Mr. Moran that he could retain counsel for free, nor is he entitled to retain counsel for free. The judge allowed him to retain counsel only after the judge had predetermined the case and had made up his mind that Mr. Moran was not entitled to cancellation of removal. At that point, it was too late. At the subsequent hearing, the first time Mr. Moran's attorney raised his intent to file an application for cancellation of removal, the immigration judge immediately said, so you want to proceed with an application for cancellation even though there's a good moral character problem with this? Clearly, he had made up his mind. So any subsequent proceedings didn't cure that problem. For all these reasons, Your Honor, we respectfully request that the Court grant Mr. Moran's petition and Thank you, counsel. The matter just argued will be submitted and we'll hear
judges: B Fletcher, Rymer, Paez